on the timing. Please pay attention to the clock, and when your time runs out, please end promptly. If you're in the middle of answering a question, of course, please go ahead and fully respond to the question. We wouldn't have asked it if we didn't want to hear the answer. But other than that, please do stick to the time limits. Thank you. All right. The first case of the day is United States v. Darryl Williams. We'll hear from Mr. Summa. May it please the Court. I'm Richard Summa. I represent Darryl Williams, the appellant, and I thank you for the opportunity to appear before the Court once again for oral argument. I'd like to address the issue which carries a potential for relief on the greatest number of counts, and that involves a question about unanimity in request for specific instruction. We argue that the District Court erred by failing to require unanimity on at least one specific false statement supporting the guilty verdicts. And we feel our position is supported by prior precedent of this Court, and we cited a Gibson case from the Fifth Circuit and a more recent case, Atkinson, from this Court in 1998. And I understand these cases for the proposition that the jury must be unanimous as to what the defendant actually did to establish the commission of the crime. The jury must agree to the defendant's course of action. And I think these cases are also consistent with the Supreme Court's case in Richardson. In Richardson, the Supreme Court said the jury must determine whether the conduct violates the law and must do that unanimously. Let me ask you a question, if you don't mind. So, you know, we have from Aileen, we have the requirement, and Apprendi and Booker and the whole line of cases, that the jury must be unanimous with respect to, and I'm sort of putting these things together, the elements of the crime. But we don't, we're not required to have a jury verdict on the, at least I don't, well, maybe you think we are required to have a jury verdict on the means, as opposed to the elements, right? The different means of carrying it out. What is your thought on that? Yeah, the case law drove a distinction, and generally, and it's expressed in the Richardson case as well, that the jury does not have to be unanimous about the means of committing an element. Now, what I understand that to be is this. The means of committing an element is a how question. How was it committed? For example, let's suppose we have a crime, a theft of a motor vehicle. There's a number of ways to affect the taking of the motor vehicle. It could be by hot wiring the ignition or towing the car away. The jury would not have to be unanimous about that. Say, a burglary case, unlawful entry is the element. The jury would not have to be unanimous about whether the defendant picked the lock of a door to get in or broke a window to get in. Well, then the question is, how does that relate to the crime at issue here? Okay. You anticipated my question. We're going to, let me just, if I may discuss first the financial institution crime, Section 1014. The element that we're talking about is making a false statement. So if it's a how question, that would be how is the statement made? There could be disputes of fact as to whether the statement was made in a written document or orally. There could be dispute of fact as to whether the statement was made to the president of the credit union or to a loan officer. Those are the types of questions that would not have to be found unanimously by the jury. But the making of the false statement itself would be considered an element because that's what the defendant did as expressed in terms of the statute. So our position is that the making of the knowingly false statement is an element and not a means of committing offense. But yet there is also another line of cases regarding specific unanimity instructions, which is less of a legal aspect and more of a requirement. Because there are cases that say where the facts and the circumstances of the case are such that jury may have been confused about which conduct actually constitutes a crime, a specific jury instruction on unanimity may also be required. And I think that comes into play in this case as well. Because we have a number of false statements and we're not consisting that they're false and we're not even consisting that they're knowingly false. But the statute requires more. There must be a nexus between the false statutes and in the 1014 So in that case, you have a particular instance or constellation of facts where the jury could unanimously agree about, let's say they agree that all these contested facts about employment and income are false and knowingly false. Yet they could still disagree about which of those statements were made with the purpose of influencing the action of the lender. And a similar problem arises in the bank fraud case because they also have to agree on which of those false statements constituted the mechanism inducing the lender to part with its money. And they also have to agree on which of those false statements were material to the lender's decision. So I think in that case, you have to consider the false statements in conjunction with the purpose for these statements, the intent of the defendant to get a proper reflection on what is the total conduct which actually constitutes the crime that they're finding him guilty of. And for that reason, I think it would have been appropriate in this case to require the jury to be unanimous on which precise statement it was. Of course, all the false statements do not have to establish that connection, but you have to have at least one on which the jury was unanimous in supporting the verdict for the financial institution crime and the bank fraud crime. And there's another, if I may shift gears a little bit with respect to the bank fraud crime in particular. We raised an issue about the restriction of the closing argument. And there was a question of materiality. And the defendant had a definite theory of defense. He wanted to say that his false statements were not material and they were not the mechanism inducing the lender's for it. He said that what was important was the fact that, well, he started off, he had a plan. He pledged security for his first loan of $500 to ensure the security of the bank. He, in subsequent loans, he offered other types of collateral like his car, getting insurance to secure the bank, to make the bank feel comfortable. He had insurance, life insurance, disability insurance, all to offer the bank security. So in his mind, his theory of defense was, given all the alternative forms of security that were provided by the bank, his statements, even though they were false about his employment and his the money or to give him his loans. And all that amounts to a jury question. Of course, the materiality is normally a jury question anyway. And it seems quite actually a fairly simple rule of law that a defendant should be able to argue that the specific conduct of the victim is relevant to a determination of how a reasonable person would have acted. And he was precluded from making that argument at trial. So that's a specific argument for remand on the bank fraud charge. And as to the other issues that I was not able to get to, we'll rely on the briefs. Thank you. Before you sit down, going back to your first argument, so there are some courts that have found that unanimity is not required concerning which particular statement was false when it comes to mail and wire fraud, for example. And one of the things they've relied on is they've noted the language of the wire fraud statute, which says a scheme or artifice to obtain any of the monies of a financial institution by means of false representations. I just wanted to give you an opportunity to comment on that if you wish to do so. Yeah, that language, by means of, it sounds like a how question. As I said, how question is something that they do not have to be, but it's not really because if you, but because if you eliminate that portion of the is left without the fraudulent representations, you have a scheme to obtain money from a lender. It's innocent conduct. So the false representations make it criminal. And under Richardson, I think the jury has to be unanimous on those particular things that make the distinction between innocent conduct and criminal conduct. Thank you. All righty. Ms. Heller. Thank you, Your Honor. May it please the court, I'm Kirby Heller for the United States. So as to the jury unanimity question, start with the proposition that in general, in criminal cases, a specific unanimity instruction is not needed. There are occasions where if it's a very complicated case, a multipurpose conspiracy, for example, or evidence of jury confusion where it might be, this is not any of those situations. In addition, the decision whether to give the instruction is reviewed for abuse of discretion. So while it may have been appropriate to give one, as was argued, it certainly was an abuse of, it was not an abuse of discretion not to give one. Now, as to the bank fraud, the jury certainly had to be unanimous on the element of executing or attempting to execute a plural. But what the specific representation might have been is one of those things that the Supreme Court has called brute fact. So for example, if you look at the indictment, the indictment charges the elements and then in the manner and means section, it says the defendant executed the scheme by these manner, including but not limited to certain manners and means. So it talked in very global terms about misrepresentations about employment and income all for the purpose of getting these loans. But there's no requirement in that manner and means section that any one of them has to be unanimously agreed upon. There just has to be sufficient evidence to show that at least one of them happened, I guess. There has to be agreement that there were false representations. What those particular ones were don't have to be agreed upon. In this case, I should just add that it was not contested below that any of these representations were false, that his income was false, that his employment and length of employment was false. So there certainly wouldn't have been jury confusion about it. And it was overwhelming evidence that all of them took place. So one could simply say, even if there were error, and I don't believe there's error, it certainly would have been harmless error in this case. But going back to what has to be found by the jury, it's just that there were false representations. So for example, if you take the theory that they had to agree on a false statement, where would you end that? Should it be a false statement on a particular day, in a particular document? And again, you're getting down to the nitty-gritty of these brute facts that don't have to be agreed upon. In fact, the jury could have simply found that the false representations were his submissions of these employment records, the earning statements that he submitted, and the doctored bank statements that he submitted as an implied representation that these were real documents. This court has endorsed that theory in a tax case as well. So again, that's the bank fraud scheme and what they have to agree on. As to Section 1014, again, they have to agree that there was a false statement. The particular false statement is another one of those brute facts. And I think the best example of that is the fact that this court has stated in a 1014 case that if you separate out false statements in separate counts, there's a multiplicity problem. So it was appropriate to charge several false statements in one application, in one document, in one report, all in one count. And so... But I don't think there's an argument that it was improper to charge them all in one count. Right. The reason that's important, Your Honor, is one of the problems with duplicity is a unanimity issue. So if facts are improperly charged in one count, you don't know which fact, which element, really, the jury agreed on. Here, you're supposed to charge it all in one count, which again suggests that the jury has to agree that there's a false statement, but they don't have to agree on which one. Can I turn your attention for a moment to the 1014 count and the argument that the crime couldn't have been committed if the loan application wasn't signed because it doesn't qualify as a, quote, application, and I guess the reliance on Sorenson. Right. So we believe that Sorenson is wrong. No court has followed Sorenson, even the Ninth Circuit, as far as I could tell, has never cited Sorenson. And it's certainly even the court in Sorenson makes clear that it's restricting its holding to those very particular facts. But in this case, and many other courts have found, that a false statement in 1014 can be oral, it can be informal, it can be implied as the tax case that I mentioned. So let me just ask you a question. I mean, I have to say that that makes sense to me. But then there seems to be sort of a line drawing problem. And I wonder if you could help me with a limitation of the principle. So what if the guy comes in to the bank and yells out, you know, I want to get a loan and, you know, I've got a million dollars in property. Okay. And he's doing it for the purpose of influencing the bank on the loan, but he doesn't actually go ahead and fill out the paperwork or do anything else ultimately. I mean, it's obviously an extreme example. And obviously that wouldn't be charged. But what is the limiting principle that cuts that off from the situation where the person submits an application but doesn't sign it so it can't be considered anyway? Right. Well, I think the factual question for the jury then would be for the purpose. So I do, in your example, if it really was never intending to go anywhere from the defendant's perspective, because that's really all we care about in 1014, if the applicant didn't really mean for it to influence the loan, then it probably, then it wouldn't be the crime. But if he made a false statement for the purpose of getting money from this federally insured financial institution in an application or for a loan, and the statute is not restricted to application, it also has loans. So it would be a crime. So it doesn't seem that that would be a very difficult- So it could be chargeable as long as you could prove that his intent was to make a false statement to secure a loan or to further an application. Yes, Your Honor, that would be our position. And in this case, of course, it's very clear that the defendant was, in fact, making these false statements for the purpose of, from his perspective, to get a loan from this credit union. What about the count? I think it's count two, the $500 loan, where it was secured by monies that were already in the bank. Let me, just to sort of ask more of a general banking question, in this circumstance, was that money segregated out of his account so that it was, he couldn't, once he put it as collateral, he couldn't touch it? Or is it a situation where the bank says, oh, you know, you've got $10,000 in your account, so of course we'll loan you $500. Yes, Your Honor, I believe there was some evidence in the record that they actually hold on to that account. In a sense, it's frozen for the purpose of the loan. As you pay it off, that part is unfrozen. Here, there was testimony. Again, this is from the bank's perspective, which is not necessarily relevant to guilt on this count. One witness did say, well, we do care about employment. If someone's not employed, we do care about that. One witness did say, well, it's a pledged loan. It just matters that this money is in the account. But again, for this count, count two, the question is, what did the defendant, what was the defendant's purpose in making this misrepresentation? There certainly was sufficient evidence for the jury to find that his purpose in making the false statements was to get the loan. He even admitted that, in fact, to an FBI agent in a post-arrest statement. If you're seeking loans from a bank and you're making these requests over the phone, and the first time you give all the false information, this is where I work, this is my income, and then you continue to make calls asking for loans, but you're not giving that information each time. It's being auto-populated onto a form. How do you address a situation like that where perhaps the false statement was made for the first loan, but it's not being made for the subsequent loans? Well, there was testimony from all of the witnesses on that issue that when the information was auto-populated, it wasn't necessarily auto-populated in all these charged loans, but when it was, the loan officer would verify with the applicant to make sure that this information was still accurate, was still, you know, still what was going on. And in fact, in several of these counts, not only did the defendant either make the representations anew or confirm that they were accurate, he submitted these fraudulent documents to corroborate what he was saying about his income and his job history. So certainly, those were very blatant affirmative steps to confirm his false statements. If there are no other questions, we'll rest on our brief. Thank you, Ms. Heller. Mr. Suma. Thank you. I'd like to make a couple of points. The first being about the standard of a review. Jury instructions are generally governed by abuse of discretion, but however, there are some jury instructions issued that turn on legal principles and I think that's what we're dealing with in this case. We're saying the specific unanimity instruction was legally required and we did argue in our brief, we cited a case for the proposition then that the review would be de novo. As for the bank fraud count, the government did cite brief cases from other district, from other circuits that say the jury does not have to be unanimous about which statements were relied on to find bank fraud. But I think this court is controlled by Atkinson on that point, which I said, under bank fraud, the jury must be unanimous about the specific overt acts which constitute the scheme to defraud. Now, I understand that that actually refers to a different paragraph of the bank fraud statute, the first paragraph, and this case proceeds under the second paragraph, but I don't think there's a meaningful distinction there because the scheme to defraud involves deceit and generally involves false statements and representations as well and these overt acts that they're talking about in Atkinson undoubtedly include a lot of false statements. So I think the holding of Atkinson controls, there may even be a split among the case. So if there are no further questions, I'll take a seat and thank you. Thank you, counsel. Next up, we have Federal Home Loan Mortgage Corporation.